UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROBERT LEE TAYLOR,

               Plaintiff,

v.

UNKNOWN SMITH et al.,

               Defendants.

_____/

Case No. 1:23-cv-296

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Blair and Olmstead. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Smith, Burns, Keck, Morales, Burton, White, and Dill: (i) official capacity claims; (ii) First Amendment retaliation claims; and (iii) Eighth Amendment conditions of confinement claims. Additionally, the Court will dismiss, for failure to state a claim, Plaintiff's Eighth Amendment excessive force claim against Defendant Burton. Plaintiff's Eighth Amendment

failure to protect claims against Defendants Smith, Burns, Keck, Morales, Burton, White, and Dill in their individual capacities will remain in the case.

**Discussion**

## I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues the following DRF officials: Hearing Investigator Unknown Smith; Lieutenant Unknown Burns; Resident Unit Manager (RUM) Unknown Blair; and Corrections Officers Unknown Keck, Unknown Morales, Unknown Olmstead, Unknown Burton, Unknown White, and Unknown Dill. (Am. Compl., ECF No. 7, PageID.27–28.) Plaintiff sues Defendants in their individual and official capacities. (*Id.*)

In Plaintiff's amended complaint, he alleges that on December 7, 2020, "while attending the small yard for the general population (GP) housing unit," Plaintiff was assaulted by prisoners Schiefel and Torres. (*Id.*, PageID.29.)[1] Plaintiff states that several corrections officers intervened and stopped the assault. (*Id.*) Thereafter, Plaintiff was taken to segregation and was interviewed by Defendant Smith. (*Id.*) "Plaintiff explained that he could not go back to GP as a 2 man assault meant gang involvement which meant Plaintiff would definitely be attacked again." (*Id.*) Plaintiff claims that Defendant Smith "knew of the risk of harm and failed to take any action to prevent it." (*Id.*)

---

[1] In this opinion, the Court corrects the spelling and capitalization in quotations from Plaintiff's complaint.

At "around 2:00 a.m. in the morning," Plaintiff was "forced to return to his GP housing unit" and was placed on "non-bond toplock" status. (*Id.*) Plaintiff states that his "assailants were also returned" to the same housing unit. (*Id.*, PageID.30.)

On December 8, 2020, Plaintiff was in the housing unit's dayroom, and prisoner Adams (a different prisoner than the prior attackers) attacked Plaintiff. (*Id.*) "Plaintiff was rushed to the E.R. due to head and face trauma," and was "treated for a broken jaw." (*Id.*) Plaintiff explained to the unnamed corrections officers "who escorted him to the hospital, then dental, and then back to segregation[,] that Plaintiff would be assaulted if he were returned to GP." (*Id.*)

Plaintiff states that when he returned to DRF, Defendant Burns told Plaintiff that he would be placed in a different general population housing unit than where he was previously housed. (*Id.*) Plaintiff refused to move, "explaining that he would be assaulted again in GP." (*Id.*) Thereafter, Plaintiff was placed in "a holding cell without the basic necessities of human life, the holding cell without running water, a toilet, or a bunk." (*Id.*, PageID.30–31 (grammar in original retained).)

On December 10, 2020, Plaintiff was told he had to either return to a single-man cell in general population or "receive a misconduct for disobeying a direct order." (*Id.*, PageID.31.) The next day, Defendant Keck told Plaintiff that he would be moved to general population to a different housing unit than where he was previously housed. (*Id.*) Plaintiff explained that "he would be assaulted again" in general population. (*Id.*) Plaintiff claims that Defendant Keck "acknowledged that he was aware of the situation but would not be taking any action." (*Id.*) Thereafter, Defendant Morales escorted Plaintiff to the new housing unit. (*Id.*) Plaintiff claims that he saw prisoner Adams on the yard, and he explained to Defendant Morales that "he was going to be assaulted." (*Id.*, PageID.31–32.) Plaintiff alleges that Defendant Morales "explained that he knew about

Plaintiff's situation but would not be taking any action," and that Defendant Morales stated: "You'll be alright." (*Id.*, PageID.32.)

In Plaintiff's new general population housing unit, he was placed in a cell that "was the furthest from the officers' station." (*Id.*) When "the yard opened[,] Plaintiff attempted to go outside and was immediately attacked by prisoners King, Wafer, and Palmateer." (*Id.* (omitting attacking prisoners' inmate numbers).) Plaintiff states that after "this assault, Plaintiff was finally placed in protective custody." (*Id.*)

On February 26, 2021, "Plaintiff got into it with a GP prisoner." (*Id.*) Plaintiff was then placed in segregation, "which resulted in his removal from protective custody." (*Id.*) Plaintiff claims that he was removed from protective custody "in spite of there being no evidence that Plaintiff's issues with gang members in GP had in any way been resolved." (*Id.*)

Plaintiff was placed in a cell "with a prisoner [(prisoner Jeffreys)] who had just assaulted his last cellmate." (*Id.*, PageID.32–33.) On March 11, 2021, prisoner Jeffreys (Plaintiff's cellmate) attacked Plaintiff and both were taken to segregation. (*Id.*, PageID.33.) Later that same day, "Plaintiff was forced to go back to his cell in GP." (*Id.*) Thereafter, on March 12, 2021, Plaintiff tested positive for COVID-19, so he was placed in quarantine in the segregation unit. (*Id.*)

On March 24, 2021, Plaintiff wrote a Prison Rape Elimination Act (PREA) grievance on Defendant Blair "for making sexual comments." (*Id.*) Plaintiff submitted the PREA grievance to Defendant Olmstead. (*Id.*) Plaintiff claims that the PREA grievance "never made it to the grievance coordinator." (*Id.*) "In retaliation for the protected conduct of filing a PREA grievance, (a document that never made it to the grievance coordinator), Defendant RUM Blair ordered that Plaintiff be sent back to GP." (*Id.*)

"Plaintiff was ordered to cell 18 which already had prisoner Schiefel," one of the prisoners who previously attacked Plaintiff. (*Id.*) Before entering the cell, Plaintiff informed Defendants Burton and White that he would be "assaulted again" if he was "forced to enter that cell with his assailant." (*Id.*, PageID.33–34.) Defendants Burton and White ordered Plaintiff to lock in the assigned cell. (*Id.*, PageID.34.) "Shortly after entering the cell[,] Plaintiff hit the emergency call button," and Defendants Burton, White, and Dill "came running up to [the] cell." (*Id.*) Plaintiff explained that he could not lock in the cell and "that an altercation with his assailant was imminent." (*Id.*) "[D]efendants ordered Plaintiff back into the cell." (*Id.*) A few minutes later, "Defendant Burton, making a round, saw Plaintiff was being assaulted." (*Id.*) Defendant Burton opened the cell and tased "both Plaintiff and his assailant." (*Id.*) Plaintiff claims that "MDOC staff again tried to send Plaintiff back to GP." (*Id.*, PageID.35.) Plaintiff explained that "he would be assaulted if he returned to GP," but Plaintiff "was ordered to return to GP." (*Id.*) Plaintiff refused to do so, and he received a misconduct ticket for disobeying a direct order. (*Id.*) Plaintiff alleges that "[s]ince these attacks, [he] has experienced nightmares, social anxiety, and paranoia as a direct result of these [D]efendants['] actions." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the First and Eighth Amendments. (*Id.*, PageID.36.) Further, the Court construes Plaintiff's allegation that his PREA grievance, which he submitted to Defendant Olmstead, "never made it to the grievance coordinator," as a Fourteenth Amendment due process claim. (*Id.*, PageID.33.) As relief, Plaintiff seeks a declaratory judgment, and compensatory and punitive damages. (*Id.*, PageID.36.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

5

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. (Am. Compl., ECF No. 7, PageID.27–28.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks monetary damages, as well as declaratory relief. An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief may constitute an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh

Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive or declaratory relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102; *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

In the present action, Plaintiff does not allege the existence of an official policy or practice, or suggest that the activities alleged in the complaint are likely to occur again. Plaintiff's allegations against Defendants relate solely to past harm, not future risk of harm. Therefore, Plaintiff does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581. Moreover, Plaintiff is no longer incarcerated at DRF, which is where he avers that Defendants are employed. The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)

(holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991).

Accordingly, for the reasons set forth above, Plaintiff's official capacity claims against Defendants will be dismissed.

### B.     First Amendment Retaliation Claims

Plaintiff alleges that Defendants retaliated against him in violation of the First Amendment. (*See* Am. Compl., ECF No. 7, PageID.36.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.     Protected Conduct

With respect to the first element of a First Amendment retaliation claim, a prisoner has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First

Amendment."). Here, Plaintiff states that he filed a PREA grievance and verbally reported his concerns regarding his placement in general population. Therefore, at this stage of the proceedings, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claim.

### 2. Adverse Action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

### a. Receipt of Misconduct Charge for Disobeying a Direct Order

Plaintiff alleges that on an unspecified date, "MDOC staff again tried to send Plaintiff back to GP." (Am. Compl., ECF No. 7, PageID.35.) Plaintiff explained that "he would be assaulted if he returned to GP," but Plaintiff "was ordered to return to GP." (*Id.*) Plaintiff refused to do so, and he received a misconduct ticket for disobeying a direct order. (*Id.*)

The issuance of a misconduct charge can be considered an adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007); *see also Hill*, 630 F.3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"). However, Plaintiff fails to allege any facts to show that any of the named Defendants were involved with the issuance of the misconduct charge for disobeying a direct order. Plaintiff's "[s]ummary reference to a single, five-headed 'Defendants' [or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted) ("This Court has consistently held that damage claims against government officials arising from

10

alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). Accordingly, any First Amendment retaliation claim premised on the issuance of the disobeying a direct order misconduct charge will be dismissed.

### b.    Transfer to General Population

Plaintiff alleges that Defendant Blair retaliated against him by ordering that Plaintiff be sent back to general population. (Am. Compl., ECF No. 7, PageID.33.) Typically, transfers to the general population of another prison are not an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). However, in *Hill v. Lappin*, the Sixth Circuit held that transfer from general population to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action. *Hill*, 630 F.3d at 474–75.

In this action, it is clear that Plaintiff did not want to be housed in general population due to ongoing issues that Plaintiff had with various other inmates; however, Plaintiff alleges no facts to suggest that Defendant Blair knew about any risk of harm to Plaintiff in general population. Therefore, under the circumstances alleged by Plaintiff, the Court concludes that Defendant Blair moving Plaintiff to general population did not constitute adverse action. Nevertheless, the Court will address the third element of a retaliation claim below.

### 3.    Retaliatory Motive

Even assuming that Plaintiff could show that his transfer to general population was an adverse action, Plaintiff fails to allege sufficient facts to show that Defendant Blair knew that Plaintiff had engaged in protected conduct by filing a PREA grievance, and Plaintiff fails to allege sufficient facts to suggest that any of the other named Defendants retaliated against him.

Although temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit has

been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

Here, Plaintiff alleges in a conclusory manner that "[i]n retaliation for the protected conduct of filing a PREA grievance, (a document that never made it to the grievance coordinator), Defendant RUM Blair ordered that Plaintiff be sent back to GP," however, Plaintiff fails to allege any facts to show that Defendant Blair knew that Plaintiff had submitted the PREA grievance. (Am. Compl., ECF No. 7, PageID.33.) Indeed, Plaintiff claims that he submitted the PREA grievance to Defendant Olmstead and that the PREA grievance "never made it to the grievance coordinator." (*Id.*) Plaintiff alleges no facts to suggest that Defendant Olmstead informed Defendant Blair about Plaintiff's PREA grievance or that Defendant Blair knew about the PREA grievance from some other source. Instead, Plaintiff merely alleges the ultimate fact of retaliation; however, he alleges no *facts* from which to reasonably infer that Defendant Blair was motivated by any protected conduct. Under these circumstances, a vague suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). Furthermore, such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005)

(citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, because Plaintiff fails to allege any facts to suggest that Defendant Blair was motivated by Plaintiff's protected conduct, Plaintiff fails to state a First Amendment retaliation claim against Defendant Blair. Furthermore, because Plaintiff alleges no facts to suggest that any of the named Defendants retaliated against him, any intended retaliation claims against the other named Defendants will also be dismissed.

### C.     Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard

13

includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

### 1.      Failure to Protect

Plaintiff claims that Defendants failed to protect him on various occasions from a risk of assault by other inmates in general population. (*See generally* Am. Compl., ECF No. 7.)

To show liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 32; *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

### a.      Defendants Smith, Burns, Keck, Morales, Burton, White, and Dill

Plaintiff claims that on separate occasions, he informed Defendants Smith, Burns, Keck, Morales, Burton, White, and Dill of the substantial risk of harm he faced in general population, and that these Defendants knew of this risk, but disregarded it and continued to place him in general population, including on one occasion, placing him in the same cell as a prior assailant. Although Plaintiff's failure to protect claims, at times, lack specificity as to each Defendant's knowledge of

the risk of harm to Plaintiff, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's failure to protect claims against Defendants Smith, Burns, Keck, Morales, Burton, White, and Dill on initial review.

**b.     Defendants Blair and Olmstead**

With respect to Defendants Blair and Olmstead, as explained below, Plaintiff fails to show that these Defendants knew of a substantial risk of harm to Plaintiff, let alone that they knew of such a risk and disregarded it.

Specifically, as to Defendant Blair, Plaintiff alleges that Defendant Blair ordered that on one occasion, Plaintiff be returned to general population; however, nothing in the complaint suggests that Defendant Blair knew about other inmates' prior attacks on Plaintiff or about a risk of harm to Plaintiff in general population. (*See* Am. Compl., ECF No. 7, PageID.33.) Under these circumstances, Plaintiff has failed to show that Defendant Blair knew of a risk of harm to Plaintiff when Blair ordered that Plaintiff be transferred to general population. *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

As to Defendant Olmstead, Plaintiff claims that he submitted a PREA grievance to Defendant Olmstead, but that the PREA grievance "never made it to the grievance coordinator." (Am. Compl., ECF No. 7, PageID.33) Plaintiff alleges no other facts about Defendant Olmstead. Although Plaintiff *believes* that it was due to Defendant Olmstead that Plaintiff's PREA grievance "never made it to the grievance coordinator," Plaintiff fails to allege *facts* to show that Defendant Olmstead prevented the grievance coordinator from receiving the PREA grievance. And, regardless, Plaintiff's allegations against Defendant Olmstead regarding the failure to provide the PREA grievance to the grievance coordinator, without additional supporting facts or explanation, do not show that Olmstead knew of a substantial risk of harm to Plaintiff, but disregarded that risk. *See Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008) (discussing that a claimed

constitutional violation must be based upon active unconstitutional behavior); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).

Accordingly, for the reasons set forth above, Plaintiff fails to state an Eighth Amendment failure to protect claim against Defendants Blair and Olmstead.

### 2.  Unspecified Sexual Comments by Defendant Blair

Plaintiff alleges that on March 24, 2021, Defendant Blair made unspecified "sexual comments." (Am. Compl., ECF No. 7, PageID.33.)

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, in the context of claims against prison officials, the Sixth Circuit repeatedly has held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not necessarily rise to constitutional dimensions. *See, e.g.*, *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (concluding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).

Further, some courts, including the Sixth Circuit, have held that minor, isolated incidents of sexual touching coupled with offensive sexual remarks also do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to

16

the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).

In contrast, repeated and extreme incidents may sufficiently state a claim. For example, the Sixth Circuit found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by demanding on multiple occasions that the prisoner expose herself and masturbate while the official watched and intimidated her into complying. *Rafferty*, 915 F.3d at 1095–96. The *Rafferty* court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

*Rafferty*, however, is distinguishable from Plaintiff's claim. Here, Plaintiff alleges that on one occasion, Defendant Blair made unspecified "sexual comments" to Plaintiff. (Am. Compl., ECF No. 7, PageID.33.) Under the circumstances alleged by Plaintiff, Defendant Blair's unspecified verbal remarks, while likely offensive and unprofessional, do not evidence the sort of coercive sexual demand at issue in *Rafferty*. *See Rafferty*, 915 F.3d at 1095–96. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Blair premised upon Blair's unspecified "sexual comments" will be dismissed.

### 3.      Conditions of Confinement in Holding Cell

Plaintiff alleges that on December 8, 2020, he was placed in "a holding cell without the basic necessities of human life, the holding cell without running water, a toilet, or a bunk." (Am. Compl., ECF No. 7, PageID.30–31 (grammar in original retained).)

The Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

As an initial matter, Plaintiff fails to allege facts to show that any Defendants were involved in his placement in the holding cell on December 8, 2020. For that reason alone, Plaintiff's Eighth Amendment conditions of confinement claim is subject to dismissal. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Moreover, as to Plaintiff's claim that the holding cell where he was placed was "without running water, a toilet, or a bunk," Plaintiff does not provide any facts about the duration of his placement in this cell. (Am. Compl., ECF No. 7, PageID.30–31.) Without facts about the duration of Plaintiff's placement in the holding cell, Plaintiff fails to show that his placement there was

more than a temporary inconvenience. Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not show that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal quotation marks omitted))).

In summary, based on the facts, or lack thereof, alleged by Plaintiff regarding his placement in the holding cell, Plaintiff fails to show that the conditions were anything other than a temporary inconvenience. Accordingly, Plaintiff's Eighth Amendment conditions of confinement claim regarding the conditions in the holding cell will be dismissed.

### 4.    Defendant Burton's Use of Force

Plaintiff alleges that while Defendant Burton was conducting a round in Plaintiff's unit, Defendant Burton "saw Plaintiff being assaulted," and Burton opened the cell and tased "both Plaintiff and his assailant." (Am. Compl., ECF No. 7, PageID.34.)

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9. "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Plaintiff's claim regarding Defendant Burton's use of the taser must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley*, 475 U.S. at 321–22. The Supreme Court has

20

held that "whenever guards use force to keep order," the standards enunciated in *Whitley* should be applied. *Hudson*, 503 U.S. at 7; *see also Wilkins v. Gaddy*, 559 U.S. 34, 37–39 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953–54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

In this action, Plaintiff alleges that while Defendant Burton was conducting a round in Plaintiff's unit, Defendant Burton "saw Plaintiff being assaulted," and Burton opened the cell and tased "both Plaintiff and his assailant." (Am. Compl., ECF No. 7, PageID.34.) Plaintiff alleges no other facts about this incident with Defendant Burton.

As an initial matter, Plaintiff does not allege that Defendant Burton's use of the taser to break up the fight was unwarranted or improper. Prison officials have a legitimate interest in maintaining security, order, and in having prisoners obey orders. *Bell v. Wolfish*, 441 U.S. 520, 560 (1979); *Caldwell v. Moore*, 968 F.2d 595, 599–601 (6th Cir. 1992). "Corrections officers do not violate a prisoner's Eighth Amendment rights when they apply force 'in a good-faith effort to maintain or restore discipline.'" *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004)). A prison official's use of a taser to maintain security and order, such as the use of a taser upon responding to a physical fight between prisoners, does not, on its own, state an Eighth Amendment claim. *See, e.g., Caldwell*, 968 F.2d

at 600–02 (collecting cases) (holding that the use of a stun gun on a disruptive prisoner to restore order and discipline was not an Eighth Amendment violation); *Jasper v. Thalacker*, 999 F.2d 353, 354 (8th Cir. 1993) (concluding that the use of a stun gun to subdue a noncompliant prisoner did not violate the Eighth Amendment when the prisoner failed to show that the officers used it "maliciously and sadistically to cause harm" (citation omitted)); *Michenfelder v. Sumner*, 860 F.2d 328, 336 (9th Cir. 1988) (upholding use of a taser on a prisoner for failure to comply with a strip search); *Gresham v. Steward*, No. 13-10189, 2014 WL 4231295, at *9–10 (E.D. Mich. Aug. 27, 2014) (finding that the use of a taser on a prisoner who refused to stop punching another prisoner even after ordered to do so was not excessive given the defendant's "interest in the threat posed by the altercation to other inmates, prison workers, administrators, and visitors" (citation omitted)).

Here, viewing the factual allegations in the complaint in the light most favorable to Plaintiff, the factual allegations show that Defendant Burton used the taser to break up a fight, in which Plaintiff was being assaulted by another inmate. (*See* Am. Compl., ECF No. 7, PageID.34.) Plaintiff has alleged no facts to suggest that Defendant Burton used the taser maliciously or sadistically to cause harm. *See Hudson*, 503 U.S. at 6–7; *see also Whitley*, 475 U.S. 312. Applying the standard articulated in *Hudson*, the Court concludes that, as shown by the facts alleged by Plaintiff, some level of non-lethal force was necessary to restore order and to protect Plaintiff from the attacking inmate. *Hudson*, 503 U.S. at 6–7.

In summary, Plaintiff has failed to show that Defendant Burton's use of the taser when trying to stop an ongoing fight violated contemporary standards of decency. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment excessive force claim against Defendant Burton.

### D.    Fourteenth Amendment Due Process Claims Against Defendant Olmstead

Plaintiff alleges that on March 24, 2021, Plaintiff wrote a PREA grievance, which he submitted to Defendant Olmstead; however, Plaintiff claims that the PREA grievance "never made

it to the grievance coordinator." (Am. Compl., ECF No. 7, PageID.33.) The Court construes this allegation to raise a Fourteenth Amendment due process claim.

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Further, the Sixth Circuit has held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. Here, besides Plaintiff's assumption that Defendant Olmstead must have interfered in some way with Plaintiff's PREA grievance because the grievance coordinator did not receive it, Plaintiff fails to allege that Defendant Olmstead engaged in any active unconstitutional conduct.

Moreover, to the extent that Plaintiff intended to raise a substantive due process claim against Defendant Olmstead, as explained below, he fails to state such a claim. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d

1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Here, the facts alleged in the complaint fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim. *Cf. Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988) (holding that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power"), *overruled in other part by Thaddeus-X*, 175 F.3d at 388; *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016).

Accordingly, for all of the reasons set forth above, Plaintiff's Fourteenth Amendment due process claims against Defendant Olmstead will be dismissed.[2]

---

[2] To the extent that Plaintiff intended to allege that Defendant Olmstead violated his right to petition the government, this right is not violated by Defendant's failure to process or act on his grievance. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond). Moreover, Defendant's action did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Defendants Blair and Olmstead will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Smith, Burns, Keck, Morales, Burton, White, and Dill: (i) official capacity claims; (ii) First Amendment retaliation claims; and (iii) Eighth Amendment conditions of confinement claims. Additionally, the Court will dismiss, for failure to state a claim, Plaintiff's Eighth Amendment excessive force claim against Defendant Burton. Plaintiff's Eighth Amendment failure to protect claims against Defendants Smith, Burns, Keck, Morales, Burton, White, and Dill in their individual capacities remain in the case.

An order consistent with this opinion will be entered.

Dated:   April 9, 2024                         /s/ Paul L. Maloney
                                               Paul L. Maloney
                                               United States District Judge

---

the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977); *cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable First Amendment claim regarding the failure to process his PREA grievance.